Cite as 2020 Ark. App. 328

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-977

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** June 3, 2020 |
| ELIZABETH GARNER | | |
| | APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV19-275] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | |
| | | HONORABLE GUNNER DELAY, JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

The Sebastian County Circuit Court adjudicated appellant Elizabeth Garner's daughter, M.G., dependent-neglected based on parental unfitness and neglect.[1] Garner argues that the trial court erred in adjudicating M.G. dependent-neglected pursuant to Garrett's Law, codified at Ark. Code Ann. § 9-27-303(36)(B)(i) (2019), because she lacked the requisite mental state to violate the statute given that she was unaware she was pregnant. Garner also argues that the trial court abused its discretion in refusing to admit a medical record showing that M.G. tested negative for illegal substances at birth, contrary to the

---

[1]The trial court also found M.G. dependent-neglected based on a finding that her father, Mark Alan Garner, is unfit; however, he is not a party to this appeal and is serving a thirty-year prison sentence for drug-related convictions.

evidence offered by the Arkansas Department of Human Services (DHS) to prove neglect. We affirm the adjudication.

## I. *Background*

On May 29, 2019, DHS received a report on its abuse hotline that the umbilical-cord (U-cord) test results for M.G., born May 21, 2019, were positive for methamphetamine and amphetamines. DHS eventually located Garner and took M.G. into custody on July 19.[2] In an affidavit attached to a petition for emergency custody, a caseworker noted that DHS had been involved with the family since 2006 when M.G.'s older siblings, C.R. and C.W., had come into care for inadequate supervision. Garner was offered drug treatment, but custody of C.R. and C.W. was ultimately given to their maternal grandparents. DHS became involved with Garner again in October 2017 when Garner gave birth to P.G., who was born with drugs in her system. P.G. was taken into DHS custody on October 25, 2018, because Garner and P.G.'s father were arrested on drug-related charges. P.G. was adjudicated dependent-neglected based on parental unfitness due to substance abuse and inadequate supervision. DHS provided services to Garner, including a referral for a drug-and-alcohol assessment, drug treatment, and random drug screens. The caseworker noted in the affidavit that Garner had not made significant progress toward reunification with P.G. and that Garner had tested positive for drugs during the foster-care case involving P.G. Concerning M.G., the caseworker reported that an investigator had difficulty locating Garner because she was using both her maiden and

---

[2]Apparently, the hospital had identified the mother as Elizabeth Garner, while DHS had identified her in its records as Elizabeth Darnell. There was also confusion with respect to Garner's address.

married names; that, when Garner was located, she denied ever having physical custody of M.G., claiming that M.G. was with Garner's parents in Conway; and that Garner denied using illegal drugs during her pregnancy with M.G. despite her positive drug tests in the months preceding M.G.'s birth. An adjudication hearing was scheduled for September 3, 2019.

Robbie McKay, a DHS supervisor, testified that Garner had been instructed to inform DHS of any life-changing events that would affect her open case concerning P.G. McKay stated that Garner had a drug-and-alcohol assessment in February 2019 but that she had not completed drug treatment. McKay said that Garner had a positive urinalysis in February 2019 for illegal drugs; that in early April 2019, she had a hair-follicle test, which detects drug use during the previous ninety-day period, that was positive for methamphetamine; and that M.G.'s U-cord test was positive for methamphetamine and amphetamines in May 2019. McKay said that Garner had recently—since M.G.'s birth—restarted drug treatment. According to McKay, Garner had not informed DHS about her pregnancy or that she had given birth. McKay testified that Baptist Hospital in Fort Smith had notified DHS of the positive U-cord results on M.G. because drugs in a newborn's system present a danger to the baby. She said that, because DHS had an open case on M.G.'s sibling, P.G., related to Garner's drug use, M.G. was also at risk.

Garner testified that she was not aware of any instructions she had received in P.G.'s case to notify DHS of any life-changing experiences, such as giving birth to another child. Garner insisted that she was not aware she was pregnant with M.G. and that she did not have similar pregnancy symptoms as she had with her prior pregnancies. Garner explained

3

that she had gone to the restroom with what she thought were gas pains, that she had felt the baby's head crowning, and that she had gone to the hospital and delivered M.G. Garner insisted that she and M.G. tested negative for illegal substances at the time of delivery and that she had provided a document to DHS stating as much. Garner testified that she has had a drug test every month since May 2019 and that the results were negative.[3] Garner claimed that within four weeks of giving birth, she sent an email to a caseworker at DHS notifying her that she had delivered M.G. She acknowledged that she had taken M.G. to visits with P.G.

Ricky Gabbard, a volunteer with CASA (court-appointed special advocates), testified that he had asked Garner about the identity of the infant during visitations with P.G. and that Garner had said she was just babysitting for a friend. He said Garner eventually asked him hypothetically whether DHS would take a child away from her if she had another one. Gabbard stated that Garner had missed visitations with P.G. from May 21 through May 29 because she claimed to have had strep throat.

In an order entered September 30, 2019, M.G. was adjudicated dependent-neglected due to parental unfitness of both parents and neglect as to Garner, specifically, "due to the presence of an illegal substance in the mother and/or the juvenile at the time of birth." The trial court further found that Garner had a positive urinalysis for illegal substances in February 2019; that she tested positive for methamphetamine on a hair-follicle test in April 2019; that the U-cord test conducted at the time of M.G.'s birth on May 21, 2019, was

[3]One drug screen dated August 21, 2019, was introduced into evidence showing that Garner had tested negative for illegal substances. There is some indication in the record that Garner tested negative on other occasions.

4

positive for methamphetamine and amphetamines; and that Garner's testimony lacked credibility in that she had attempted to conceal and downplay her drug usage. In its comments from the bench, the trial court described Garner as "deceitful" and said that she was a person of above-average intelligence who had given birth to other children. The trial court said that it was "unpersuaded that she was unaware of her pregnancy." Garner filed a timely appeal from the adjudication.

## II. *Standard of Review*

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(A)(ii). Only one ground is necessary to support a dependency-neglect finding. *Trotty v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 557, 504 S.W.3d 636. In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Ward v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 376, 553 S.W.3d 761. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing a dependency-neglect adjudication, we defer to the trial court's evaluation of the credibility of the witnesses. *Id.*

III. *Discussion*

A. Sufficiency of the Evidence

A "dependent-neglected juvenile" is any juvenile who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile: (i) abandonment; (ii) abuse; (iii) sexual abuse; (iv) sexual exploitation; (v) neglect; (vi) parental unfitness; or (vii) being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian. Ark. Code Ann. § 9-27-303(18)(A). Arkansas Code Annotated section 9-27-303(36)(B)(i), also known as Garrett's Law, provides that "neglect" includes (a) causing a child to be born with an illegal substance present in the child's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child; or (b) at the time of the birth of a child, the presence of an illegal substance in the mother's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child.

Garner specifically argues that "the trial court clearly erred in adjudicating M.G. dependent-neglected pursuant to 'Garrett's Law'" and cites Ark. Code Ann. § 9-27-303(36)(B)(i). She asserts that the trial court was required to find that she *knowingly* used an illegal substance before the birth of M.G. Garner contends that she "lacked the requisite culpable mental state to constitute 'neglect' as contemplated by the statute" because she was unaware that she was pregnant with M.G.

The trial court adjudicated M.G. dependent-neglected on two separate bases: parental unfitness as to both parents and neglect by Garner. Garner challenges the

6

adjudication only as it relates to neglect, specifically with respect to Garrett's Law. Her argument is couched in terms of statutory interpretation, suggesting that "knowingly" modifies both using illegal substances and being pregnant. Garner, however, does not challenge the trial court's finding that she is an unfit parent. While "parental unfitness" is not defined in the statute, case law indicates that illegal drug use by a parent renders that parent unfit. *Hilburn v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 420, 558 S.W.3d 885. Here, the trial court found that Garner had tested positive for illegal drugs while she was pregnant with M.G. and that M.G.'s U-cord test was positive for illegal drugs. The finding of parental unfitness does not hinge on whether Garner knew she was pregnant, and the trial court specifically found that Garner was not credible in stating that she was unaware she was pregnant, given her above-average intelligence and prior pregnancies resulting in live births. When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse. *Thomsen v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 687, 370 S.W.3d 842. Again, only one ground is necessary to support an adjudication of dependency-neglect. *Trotty*, *supra*. Because Garner focuses only on the trial court's finding of neglect under Garrett's Law and does not challenge the trial court's finding that she is an unfit parent, we affirm the trial court's adjudication.

Garner further contends that, although the trial court found that she was not credible when she testified that she was unaware she was pregnant with M.G., lack of credibility is not evidence. She cites *Guthrey v. Arkansas Department of Human Services*, 2017 Ark. App. 19, 510 S.W.3d 793. In *Guthrey*, this court held that the trial court erred in finding that the fact that Guthrey had been evasive and less than honest throughout the case was evidence

7

that she had failed to remedy her "poor judgment." We noted that, although we defer to the trial court's findings on credibility, the lack of credibility, standing alone, does not amount to a failure to remedy a condition that caused the children's removal. We held that the trial court erroneously substituted its credibility determination for substantive evidence sufficient to support its finding. Here, the trial court's adjudication did not rest solely on its finding that Garner lacked credibility. As noted earlier in this opinion, the trial court also considered positive drug tests during Garner's pregnancy with M.G. and a U-cord test that was positive for methamphetamine and amphetamines at the time of M.G.'s birth.

## B. Evidentiary Ruling

Garner argues that the trial court erred in refusing to admit into evidence a document that purports to show that M.G. tested negative for illegal substances at birth. A trial court's rulings on the admissibility of evidence will not be reversed absent a manifest abuse of discretion. *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

Garner sought to admit a document entitled "Flowsheet Print Request." The date range is from May 18 to May 22, 2019. The patient's name is "GARNER, BGELIZABETH." There is a medical-records number (MRN) below the name. The toxicology section of the document shows that the patient, weighing 2.8 kilograms with a height of 45.72 centimeters, tested negative for illegal substances.

The trial court had earlier permitted DHS to introduce the U-cord test into evidence over Garner's hearsay objection because DHS had subpoenaed medical records pursuant to the Hospital Records Act. The trial court, however, denied Garner's request to admit the document purporting to show that M.G. had tested negative for illegal substances at birth.

8

The trial court found that the protocol for admission of medical records had not been followed to allow admission of Garner's proffered document.

The Hospital Records Act, codified at Ark. Code Ann. § 16-46-306 (1999), provides that a copy of a medical record shall be admissible in evidence to the same extent as though the original record was offered and the custodian had been present and testified to the matters stated in the affidavit. The Arkansas Rules of Evidence apply at adjudication hearings. Ark. Code Ann. § 9-27-325(e)(1). On appeal, Garner contends that the proffered exhibit was admissible as part of the Hospital Records Act and points out that the document she sought to admit into evidence had the same MRN as the medical records subpoenaed by DHS. Garner asserts that, because DHS subpoenaed the entirety of the medical records, the urinalysis with the same MRN must have been included in the packet of records containing the U-cord test.

At the hearing, the trial court questioned the parties as to whether the proffered document was, in fact, included with the medical records subpoenaed by DHS. Counsel for DHS flatly denied that it was included with the subpoenaed medical records, while Garner's counsel was equivocal and finally admitted that she had received the urinalysis from Garner herself. In other words, Garner's proffered document was *not* part of the subpoenaed medical records that had been verified by the hospital. Moreover, there was no separate verification for the proffered document. Under these circumstances, we cannot say that the trial court abused its discretion in denying Garner's request to admit the proffered document purporting to show that M.G. had tested negative for illegal substances.

Affirmed.

9

ABRAMSON and SWITZER, JJ., agree.

*James & Streit, Attorneys at Law*, by: *Jonathan R. Streit*, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.