Cite as 2021 Ark. App. 108

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-600

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLANTS<br><br>V.<br><br>LAUREN HALL, JEFFREY MCEWEN, AND ROBERT HALL<br>APPELLEES | **Opinion Delivered:** March 10, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. 60JV-20-405]<br><br>HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>REVERSED AND REMANDED |

## RAYMOND R. ABRAMSON, Judge

The Arkansas Department of Human Services (DHS) appeals the Pulaski County Circuit Court's order denying its petition for dependency-neglect of Lauren Hall's children, E.M., P.H., and O.W. The circuit court found there was no basis to conclude that Hall was an unfit parent or neglected her children and further found that Hall's family kept the children safe. As a result, the circuit court dismissed the entire juvenile court case with prejudice. DHS now appeals, alleging reversible error. We reverse and remand.

The facts of the case are as follows. On December 24, 2019, DHS received a hotline report that Hall had given birth to O.W. the day before and that both Hall and O.W. had tested positive for methamphetamine and amphetamines. At that time, Hall also had two other children who were in her legal and physical custody: P.H. and E.M. Following the hotline report, DHS intervened, and on January 7, 2020, DHS held a "Team-decision-

making meeting" (TDM meeting) with Hall. At the meeting, Hall agreed to attend a drug assessment at the University of Arkansas for Medical Sciences (UAMS), refrain from illegal drug use, and cooperate with the SafeCare program, which is a parenting-class program.

On January 13, Hall missed her scheduled drug-assessment appointment with UAMS, and DHS referred her for another drug assessment—this time with Recovery Centers of Arkansas (RCA). On February 10, SafeCare informed DHS that Hall had failed to begin her sessions with the program. Hall either failed or avoided drug screens on the following dates in 2020: February 6 and 19; March 23, 24, and 30; and April 15.

On April 29, a representative from SafeCare contacted DHS and requested assistance from the department because Hall continued to fail to comply with the SafeCare program. The next day, DHS held another TDM meeting to address Hall's lack of cooperation with services and her positive drug screens for methamphetamine. This meeting was held via Zoom with DHS, SafeCare, Hall, and her mother, Kelli Martindill, in attendance.

During the meeting, Hall became very defensive and refused to accept any responsibility for failing to attend her drug assessment and for using methamphetamine. DHS requested that Hall allow it to collect a hair sample from her children to test them for illegal substances; however, Hall refused this request, became angry, stated she wanted an attorney, and ended the meeting.

After the abrupt ending of the April 30 TDM meeting, DHS determined it was necessary to remove O.W., P.H., and E.M. from Hall. DHS went to the Martindill home to remove the children. Hall, who resided at the home, was screaming and yelling with O.W. in her arms and refused to hand over O.W. DHS employees also suspected that Hall

2

was under the influence of methamphetamine given her erratic behavior during this encounter. As a result, the North Little Rock Police Department was contacted for assistance. When officers arrived on the scene, they were able to eventually convince Hall to turn O.W. over to DHS custody. DHS placed E.M. with his paternal grandparents; P.H. stayed with Martindill; and O.W. went to a licensed foster home.

On May 4, DHS filed a petition for ex parte emergency custody and dependency-neglect of the children. The circuit court denied the petition and specifically found that the facts alleged in the petition and affidavit did not support a finding that the children were at an immediate and substantial risk of harm. Additionally, the circuit court cited DHS's failure to include information regarding contact with the children's fathers as a basis for the denial.

On May 6, DHS filed an amended petition for ex parte emergency custody of O.W., a petition for less-than-custody as to E.M. and P.H., and a petition for dependency-neglect as to all the children. In this petition, DHS alleged that it exercised a second emergency hold on O.W. only. It further alleged that E.M. resided with his paternal grandparents, Glennera and Richard McEwen; that P.H. resided with Martindill; and it requested that those children remain in the physical custody of their grandparents with safeguards in place to prevent Hall from removing them from the grandparents' homes. Additionally, DHS alleged that Hall was married to Robert Hall (Robert) at the time of P.H.'s and O.W.'s birth; that he was incarcerated in the federal penitentiary in Yazoo City, Mississippi; and that Jeffery McEwen, E.M.'s father, had visitation with E.M. on Wednesdays in the McEwens' home.[1]

---

[1]Neither Robert Hall nor Jeffrey McEwen filed appellate briefs in this case.

On May 7, the circuit court entered an order granting this amended petition. On May 11, the circuit court held a probable-cause hearing wherein it found that although probable cause existed at the time of removal, probable cause no longer existed for O.W. to remain in DHS's custody, and it returned custody of O.W. to Hall and Robert.

Despite finding no probable cause, the circuit court maintained jurisdiction and ordered Hall to not remove O.W. from Martindill's home unless she entered inpatient drug treatment. As for P.H., the circuit court also found that probable cause no longer existed because P.H. lived in Martindill's home where Hall also resided; therefore, the circuit court ordered that P.H. be returned to Hall's legal and physical custody. Regarding E.M., the circuit court found that probable cause continued to exist and ordered that E.M. remain in the legal custody of Hall and in the physical custody of the McEwens. The circuit court further ordered Hall to not remove E.M. from the McEwens' home and set the case for an adjudication hearing as to all the children on June 4, 2020.

On May 18, DHS filed a motion for ex parte emergency change of custody for O.W. and P.H. In support of this motion, DHS cited Hall's failure to attend her drug assessment with RCA on May 14, 2020, and hair-follicle-test results for all three children that revealed alarmingly high levels of methamphetamine in their systems. DHS also cited an incident that occurred after Hall had failed to attend her drug assessment with RCA. More specifically, on May 14, DHS attempted to conduct a home visit at Martindill's home where Hall resided, but no one would answer the door. Thereafter, DHS spoke with Hall on the telephone, and Hall informed DHS that she was going to pick O.W. up from a babysitter's

4

house in Maumelle and that she and O.W. would not be returning to Martindill's home for the home visit, which was in clear violation of the circuit court's probable-cause order.

On May 19, the circuit court entered an order denying DHS's motion finding that while it had serious concerns about the results of the hair-follicle drug screens, the circumstances alleged did not constitute an emergency. Additionally, the circuit court held that the opposing parties were entitled to time to respond to DHS's motion and that it would rule on the remaining part of the motion, *i.e.*, the motion for change of custody, at the adjudication hearing.

On June 4, the circuit court began the adjudication hearing; however, it was continued to a later date due to issues involving service of the pleadings. On July 23, the circuit court concluded the adjudication hearing.

One of the witnesses at the hearing was Lorie Hutto, the DHS family service worker (FSW) supervisor assigned to the case who also exercised the emergency holds. Hutto testified that DHS first became involved with the family after Hall and O.W. both tested positive for methamphetamine when O.W. was born. Hutto stated that while Hall did attend the UAMS drug assessment, she failed to comply with the recommended drug treatment, failed to comply with SafeCare's requests, and failed monthly drug screens from January to April 2020.

Hutto also stated that DHS tried to discuss these compliance issues with Hall at the April 30 TDM meeting, but after Hall refused to cooperate, DHS exercised emergency custody of the children. Hutto further testified that when the court denied the department's first emergency petition, DHS took a second hold on O.W. only and requested less-than-

custody of P.H. and E.M., who were in the physical custody of their grandparents. However, Hutto stated that after the probable-cause hearing, DHS received positive hair-follicle-test results for the children, and Hall failed to attend her scheduled drug assessment with RCA, which prompted DHS's emergency change-of-custody request for O.W. and P.H.

Hall testified at the hearing and admitted that she failed to comply with the outpatient treatment recommended by UAMS, that she used illegal drugs during her pregnancy with O.W., and that she and O.W. tested positive for methamphetamine at O.W.'s birth. Additionally, despite admitting that she had yet to enter a drug-treatment program since DHS became involved in the case in December, Hall testified that she had resolved her addiction issues and had not used illegal drugs since April 2020. Further, Hall testified that she believed her drug use in December 2019 caused O.W. to test positive on her hair-follicle test.

At the conclusion of the July 23 hearing, the circuit court stated that it would take the case under advisement; and on July 27, the circuit court issued an order dismissing DHS's petition with prejudice and closing the case. DHS now appeals that order arguing that the circuit court erred by denying its petition to adjudicate the children dependent-neglected.

The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof. *E.g.*, *Araujo v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 181, at 4, 574 S.W.3d 683, 685. The burden of proof at an adjudication hearing is preponderance of the evidence. *Id.*, 574 S.W.3d at 685. On appeal, the appellate court will defer to the circuit court's credibility determinations and will not reverse the circuit

court's order unless its findings were clearly erroneous. *Id.*, 574 S.W.3d at 685. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.*at 4, 574 S.W.3d at 685–86.

A dependent-neglected juvenile is defined as any juvenile who is at substantial risk of serious harm as a result of neglect or parental unfitness to the juvenile or a sibling of the juvenile. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2019). Additionally, a finding of dependency-neglect occurs without reference to whether a particular parent committed the acts or omissions that caused the dependency-neglect; rather, the juvenile is simply dependent-neglected. *E.g.*, *Araujo*, 2019 Ark. App. 181, at 4, 574 S.W.3d at 686. Further, only one ground is necessary to support a dependency-neglect finding. *E.g.*, *Garner v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 328, at 8, 603 S.W.3d 858, 862.

Under section 9-27-303(36)(B)(i), the definition of neglect includes the following:

> *(a)* Causing a child to be born with an illegal substance present in the child's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child; or

> *(b)* At the time of the birth of a child, the presence of an illegal substance in the mother's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child.

As for the definition of parental unfitness, it is undefined in the Arkansas Juvenile Code; however, appellate courts have repeatedly held that parental drug use is sufficient evidence of parental unfitness. *E.g.*, *Garner*, 2020 Ark. App. 328, at 7, 603 S.W.3d at 862 ("While 'parental unfitness' is not defined in the statute, case law indicates that illegal drug

use by a parent renders that parent unfit."); *Hilburn v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 420, at 4, 558 S.W.3d 885, 888 ("Illegal drug use by a parent makes that parent unfit.").

The testimony at the adjudication hearing established that Hall admitted drug use while pregnant and continued to use drugs for months after this case began. Yet in the circuit court's order closing the case, the court specifically found "no basis for determining the mother is an unfit parent or neglected the juveniles," and "mother's family has helped mother keep the juveniles safe." On the basis of the record before us, we hold this was error.

Taking into consideration all the evidence of Hall's extended drug use, we are left with a definite and firm conviction that a mistake has been made. The circuit court's finding that E.M., P.H., and O.W. were not dependent-neglected is clearly erroneous. Accordingly, we reverse the circuit's court order entered July 27, 2020, and remand the case for further proceedings in conformity with the Arkansas Juvenile Code.

Reversed and remanded.

KLAPPENBACH and BROWN, JJ., agree.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.

*Eden Law Firm*, by: *Kimberly Eden*, for separate appellee Lauren Hall.