Cite as 2021 Ark. App. 464

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-317

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLANT<br><br>V.<br><br><br>ARABIA JACKSON ET AL.<br>APPELLEES | **Opinion Delivered** November 17, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. 60JV-21-138]<br><br>HONORABLE SHANICE JOHNSON, JUDGE<br><br>REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Arkansas Department of Human Services (DHS) appeals from an order denying its petition for dependency-neglect of appellee Arabia Jackson's newborn twins, T.J.1 and T.J.2 (sometimes referred to herein as "the twins").[1]  DHS argues that the trial court erred in finding that DHS failed to prove that the children were dependent-neglected. We agree, and we reverse and remand.

The facts are as follows.  On February 24, 2021, DHS received a hotline report that Arabia had given birth to the twins the day before and that Arabia had tested positive for methamphetamine and amphetamines.  At that time, Arabia's three older children were already in DHS custody and in foster care.  DHS placed an emergency hold on the twins and filed a petition for emergency custody and dependency-neglect on March 2, 2021.  The

---

[1]The children's father appeared in the dependency-neglect proceedings but did not testify.  No further information about the father can be gleaned from the record.

trial court entered an ex parte order for emergency custody on March 4. On April 13, the trial court entered a probable-cause order finding that it was contrary to the juveniles' welfare for them to be returned to Arabia's custody due to Arabia's positive drug screen for illegal substances at birth, noting that both children were on oxygen in the hospital and were going through withdrawals and having problems feeding.

An adjudication hearing was held on May 11, 2021. The only witness to testify was DHS investigator Megan Johnson. Ms. Johnson stated that she was assigned to this case as a Garrett's Law case as a result of Arabia's testing positive for illegal drugs when the twins were born. Ms. Johnson stated that at the hospital, Arabia denied any illegal drug use and stated she was taking certain medications, although she did not provide any prescriptions. In a subsequent conversation with Ms. Johnson after Arabia was released from the hospital, Arabia admitted having a drug history but denied current drug use. Arabia also told Ms. Johnson that she had completed her services in the other dependency-neglect case involving her three older children, albeit through private sources independent of DHS.

Ms. Johnson also gave testimony related to the other dependency-neglect proceeding involving Arabia's three older children. Ms. Johnson testified that she had reviewed the records from DHS's CHRIS system, and those records showed that DHS had been involved with the family in this other case since 2019. Ms. Johnson was asked about what specific services had been provided in the other case, and she responded that she is not a foster-care worker and would "have to go find it on CHRIS." Ms. Johnson then advised that she could find information on the twins' case but was not finding this information with respect to the case involving the other children.

2

DHS also introduced excerpts from the twins' birth records, which were admitted into evidence. These records contained the following excerpt dated February 24, 2021, from social worker Tealisa Allen, who had spoken with Arabia at the hospital the day after the twins were born:

> Consult placed due to positive drug screen and unsure of the custody of other children. SW met with MOB to discuss her positive UDS of amphetamines and methamphetamines. MOB denies the use of amphetamines and methamphetamines. She reports she takes other medications. MOB provided SW with three medications (Restoril, famotidine, and aspirin) she pulled out of her purse.
>
> She reports she also has other medications, but refused to give the names of her other medications. MOB did not want to provide SW with the other medications. MOB said, "If they ask for the other medication, I will deal with that then." MOB reports she is in the UAMS Women's program. She states she has been going to the program for two months.
>
> . . . .
>
> Infant and MOB not cleared to D/C home at this time. SW awaiting DHS determination for MOB and infant.

In another excerpt from the twins' medical records, there was a progress note from Dr. William Benton that stated "ACTIVE DIAGNOSES," and under this heading, Dr. Benton wrote "Maternal Drug Abuse—unspecified" with a start date of the twins' birth date of February 23, 2021. Dr. Benton commented further: "Maternal UDS + presumptive amp/meth [Admits to amp/meth, thc, and barbits last use 9/20]—UCDS sent on admit = pending as of 3/1." In a subsequent excerpt by Dr. Terrance Zuerlein, Dr. Zuerlein wrote: "Maternal UDS amphetamines/methamphetamines [Admits to amp/meth, thc, and barbits last use 9/2020]—UCDS positive for amphetamines." Dr. Zuerlein stated that the plan was "Discharge coordination, Social Services and DHS to determine discharge disposition and follow up due to maternal drug use." The twins' umbilical-cord drug screen was contained

3

in the medical records reflecting that they were positive for amphetamines at birth as reported by Dr. Zuerlein.

The trial court denied DHS's dependency-neglect petition from the bench, and announced:

> The court has reviewed the evidence that has been submitted and the court is dismissing the petition, as both of the—I have looked through both of these exhibits. There are no drug screens in this—in anywhere in here that indicates that mother or the babies were positive for any illegal substances.
>
> . . . .
>
> Alright; so, on this page right here—well, I can't highlight it, but it says MOB denies the use of amphetamines and methamphetamines. I don't know who MOB is, as that's an acronym used throughout and I don't—I don't know who—who that's referring to and I can't assume that, as it has not been put in evidence who MOB is. Then—and it also indicates that on that—whoever MOB is that MOB denies amphetamines and methamphetamine use; that's also there too.
>
> Then, on this next page, it indicates that maternal UDS, which is positive for—well, maternal UDS amphetamines and methamphetamines admits to amphetamines, meth, THC, and barbiturates, last used 9—it doesn't—there's no—there's no drug screen and it's—as I don't know who MOB is and even UDS. I would have to assume that is a urine drug screen, as there's no urine drug screen actually—for mother actually in this packet to know that that's what they're referring to, to tie that together. Now—which I'm not—that's not my job to do, to tie it together.
>
> And then, the juveniles' umbilical cord screening says the only substance that its positive for is amphetamines, which amphetamines by themselves are not illegal. So, based upon that there are no positive screens actually contained in here and that there are a bunch of acronyms used, in which the court would have to infer and that has not been explained on the record by anyone what those acronyms mean that are contained within these documents, the court is dismissing the petition and finds that DHS has not met its burden.

On May 11, 2021, the trial court entered an order dismissing DHS's dependency-neglect petition, where the court found:

4

The Arkansas Department of Human Services ("DHS") did not prove its case by a preponderance of the evidence. None of the exhibits contain a positive drug screen for illegal substances for the juveniles or the mother. There are consult notes that reference acronyms such as "MOB" and UDS" that are not explained in the exhibit or through testimony, and the Court will not assume what those acronyms mean. The juveniles' umbilical cord screens are positive for amphetamines. A positive test for amphetamines alone is not a sufficient basis for Garrett's Law. The Court also has concerns regarding the caseworker's testimony that she did not know how to locate the prior services DHS offered in previous contacts with the family in DHS' CHRIS system.

DHS now appeals from that order, arguing that the trial court erred in denying its petition to adjudicate T.J.1 and T.J.2 dependent-neglected.

The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof. *Ark. Dep't of Hum. Servs. v. Hall*, 2021 Ark. App. 108, 618 S.W.3d 219. The burden of proof at an adjudication hearing is preponderance of the evidence. *Id.* In dependency-neglect cases, the standard of review on appeal is de novo, but the appellate court will not reverse the trial court's findings unless they are clearly erroneous. *Hilburn v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 420, 558 S.W.3d 885. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Hall*, *supra*.

A dependent-neglected juvenile is defined as any juvenile who is at substantial risk of serious harm as a result of neglect or parental unfitness to the juvenile or a sibling of the juvenile. Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2021). Additionally, a finding of dependency-neglect occurs without reference to whether a particular parent committed the acts or omissions that caused the dependency-neglect; rather, the juvenile is simply dependent-neglected. *Araujo v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 181, 574 S.W.3d

5

683. Further, only one ground is necessary to support a dependency-neglect finding. *Garner v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 328, 603 S.W.3d 858.

Under section 9-27-303(37)(B)(i), the definition of neglect includes:

*(a)* Causing a child to be born with an illegal substance present in the child's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child; or

*(b)* At the time of the birth of a child, the presence of an illegal substance in the mother's bodily fluids or bodily substances as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child.

Subsections (37)(B)(ii)–(iv) provide:

(ii) For the purposes of this subdivision (37)(B), "illegal substance" means a drug that is prohibited to be used or possessed without a prescription under the Arkansas Criminal Code, § 5-1-101 et seq.

(iii) A test of the child's bodily fluids or bodily substances may be used as evidence to establish neglect under subdivision (37)(B)(i)*(a)* of this section.

(iv) A test of the mother's bodily fluids or bodily substance or the child's bodily fluids or bodily substances may be used as evidence to establish neglect under subdivision (37)(B)(i)*(b)* of this section[.]

As for the definition of parental unfitness, it is undefined in the Arkansas Juvenile Code; however, appellate courts have repeatedly held that parental drug use is sufficient evidence of parental unfitness. *Garner*, 2020 Ark. App. 328, at 7, 603 S.W.3d at 862 ("While 'parental unfitness' is not defined in the statute, case law indicates that illegal drug use by a parent renders that parent unfit."); *Hilburn*, 2018 Ark. App. 420, at 4, 558 S.W.3d at 888 ("Illegal drug use by a parent makes that parent unfit.").

We agree that the trial court clearly erred in denying DHS's petition for dependency-neglect because the evidence presented at the adjudication hearing showed that Arabia tested positive for an illegal substance, i.e., methamphetamine, when the twins were born. With

this proof, DHS proved "neglect" under the definition in section 9-27-303(37)(B)(i)*(b)*, which placed the twins at risk of serious harm.

This case was initiated as a Garrett's Law case when, the day after the twins were born, DHS received a hotline report that Arabia had tested positive for methamphetamine and amphetamines. Social worker Tealisa Allen spoke with Arabia at the hospital and reported: "Consult placed due to *positive drug screen* and unsure of the custody of the other children. SW met with MOB to discuss positive UDS of amphetamines and methamphetamines." This report was contained in the twins' birth records. It is patently obvious by context that "SW" refers to "social worker," "MOB" refers to "mother of babies," i.e., Arabia, and that "UDS" is a "urine drug screen."

In another excerpt from the twins' birth records, Dr. Benton reported maternal drug abuse with a start date of the twins' birth and further reported, "Maternal UDS + presumptive amp/meth." In parentheses, Dr. Benton indicated that Arabia had admitted using methamphetamine and other illegal substances during her pregnancy. In a subsequent report by Dr. Zuerlein, Dr. Zuerlein omitted the word "presumptive" and wrote, "Maternal UDS amphetamines/methamphetamines," again commenting that Arabia had admitted using methamphetamine during her pregnancy. Here, again, it is obvious by context that "UDS" is referencing a urine drug screen, as previously referenced in Ms. Allen's report.

We conclude that the trial court erred in requiring DHS to explain commonly used acronyms in the medical records and further erred by requiring proof that Arabia's actual positive drug screen be introduced. Neither the trial court nor this court is required to set aside common sense in assessing the evidence, and the medical records conclusively

7

demonstrated that Arabia's bodily fluids tested positive for methamphetamine contemporaneous with the birth of the twins. Therefore, in our de novo review, we are left with a definite and firm conviction that a mistake has been made in denying DHS's petition for dependency neglect.[2]

For these reasons, we reverse the trial court's order entered on May 11, 2021, and we remand the case for further proceedings in conformity with the Arkansas Juvenile Code.

Reversed and remanded.

HARRISON, C.J., and MURPHY, J., agree.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellant.

*The Ashley Lambert Law Office, PLLC*, by: *Ashley Lambert-Bland*, for appellee Arabia Jackson.

---

[2]We acknowledge that, in addition to erroneously finding inadequate proof of Arabia's positive drug screen in its order, the trial court also expressed "concerns" regarding the caseworker's inability to use the DHS CHRIS system to identify prior services in the previously opened dependency-neglect proceeding involving Arabia's three older children. We conclude that the trial court's "concerns" about the caseworker's unfamiliarity with the CHRIS system constitute no grounds to deny the dependency-neglect petition.