Cite as 2023 Ark. App. 405

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-150

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | Opinion Delivered September 27, 2023 |
| APPELLANT | |
| | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30JV-22-100 |
| V. | |
| AMBERLEY STEPHENS, AMANDA MITCHELL, AND JUNIEL MONTELARA | HONORABLE CHRIS E WILLIAMS, JUDGE |
| APPELLEES | |
| | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

**ROBERT J. GLADWIN, Judge**

This appeal comes to the court from an order of the Hot Spring County Circuit Court declining to adjudicate the children of Amberley Stephens, Amanda Mitchell, and Juniel Montelara dependent-neglected.[1] On appeal, the Arkansas Department of Human Services (DHS) argues that the circuit court's denial of the petition for dependency-neglect conflicts with the court's order that MC1 shall remain in foster care and requires reversal. We affirm the circuit court's dependency-neglect finding, reverse the portion of the court's order requiring that MC1 remain in foster care and DHS custody, and dismiss.

---

[1] Stephens is the stepmother of MC1, MC2, and MC3 and is the biological mother of MC4 and MC5. Amanda Mitchell is the biological mother of MC1, MC2, and MC3.

I. *Background Facts*

On September 1, 2022, DHS exercised a seventy-two-hour hold on MC1, MC2, MC3, MC4, and MC5[2] in order to protect the juveniles from immediate danger to the juveniles' health or physical well-being. Two of the five children, MC1 and MC2, alleged that their father, Juniel Montelara (Montelara) had sexually abused them. The juveniles also alleged that their stepmother, Amberley Stephens (Stephens), knew of the abuse but failed to take any action. DHS had a history of investigating sexual abuse allegations in the family.

On September 6, 2022, DHS filed a petition for ex parte emergency custody and dependency-neglect of the juveniles, pleading sexual abuse, neglect, and parental unfitness as the basis for granting the petition. That same day, the circuit court entered an ex parte emergency order for custody and placed custody of the juveniles with DHS. On September 13, the court held a probable-cause hearing after which the circuit court entered an order (filed on September 30) wherein the court found probable cause existed for the emergency order to remain in place.

The circuit court held an adjudication hearing on November 8 and heard testimony from MC1, Stephens, Montelara, and Debbie McClanahan. MC1 testified as to the alleged sexual abuse by her father; said that she did not feel comfortable at home because of the abuse taking place; specifically testified that "he would always make me get in the shower

---

[2]The juveniles involved are MC1, a female born on May 11, 2007; MC2, a female born on July 26, 2008; MC3, a male born on August 31, 2009; MC4, a female born on July 29, 2019; and MC5, a female born on July 30, 2019.

with him," that he "made me have sex with him in the front seat," that he "strapped me down to the bed," that "he put his penis in my front area again," and that her father forced her to watch porn videos. MC1 further stated that she felt safer in foster care because she did not want the abuse to continue. MC1 also expressed concern for her siblings and alleged that she told her stepmother—Stephens—of the abuse, but that it continued after this conversation.

Montelara testified and admitted that MC1 had previously made other allegations of sexual abuse—which resulted in investigations "into every single one"—but those had been "unsubstantiated." He also acknowledged other allegations of abuse by MC2, including those of sexual abuse. However, Montelara denied the allegations and noted discrepancies in MC1's testimony, such as the brand of the vehicle where the rape took place. He suggested that MC1 made the allegations in response to his rule against dating and because of a "40 year old that she was talking to." Stephens and Stephens's mother, Debbie McClanahan, both denied having knowledge of MC1's allegations and agreed that the accusations were in response to Montelara's refusal to allow MC1 to date.

The circuit court denied DHS's dependency-neglect petition and held as follows:

> [MC1] made one statement and the parents made another. There were previous investigations that were unsubstantiated. There should have been a psychological evaluation in one of those investigations that the Court should have received today but was not given. The Court needs more than the Court received today. This is a "he said she said" issue. The Court finds that the Department has failed to meet its burden to prove the juveniles are dependent-neglected. The Department has not proven its case.

3

> The Department shall keep a protective services case open. The Court is only worried about [MC1] at this time. There is no proof that the other children were abused. [MC1] shall remain in foster care and the other juveniles shall be returned to the custody of the parents. As to [MC1] the Court finds that it is contrary to the welfare of the juvenile to go home and foster care is the least restrictive means to protect the child at this time but does not make any findings as to adjudication. Custody of [MC2] and [MC3] is hereby returned to the custody of the parent, Juniel Montelara. Custody of [MC4] and [MC5] is hereby returned to the custody of the parents, Amberley Stephens and Juniel Montelara.

Further, the court held that the attorney ad litem shall remain in place and entered a Rule 54(b) certificate, making this a final adjudication. Even so, the circuit court held that jurisdiction of the case would continue with a review hearing to take place on January 10, 2023.

After the circuit court announced its ruling at the hearing, DHS objected, arguing that the juvenile code does not permit a juvenile to remain in foster care without a dependency-neglect finding and requested that the circuit court make a parental-unfitness finding if it intended to keep MC1 in foster care. The court, however, maintained its position, stating that the court could "still leave a protective services case upon the child through the Ad Litem." Furthermore, the circuit court reiterated its concern in MC1 returning home with Montelara and Stephens, maintaining that "if she goes back in, then I can tell you, the whole household is going to blow up."

The circuit court entered the adjudication-hearing order on December 20, 2022, and DHS filed a timely notice of appeal. This one-brief appeal followed.

II. *Standard of Review*

4

The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof. *Ark. Dep't of Hum. Servs. v. Hall*, 2021 Ark. App. 108, 618 S.W.3d 219. The burden of proof at an adjudication hearing is preponderance of the evidence. *Id.* In dependency-neglect cases, the standard of review on appeal is de novo, but the appellate court will not reverse the circuit court's findings unless they are clearly erroneous. *Hilburn v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 420, 558 S.W.3d 885. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Hall, supra.* Moreover, in reviewing dependency-neglect adjudications, we defer to the circuit court's evaluation of the credibility of the witnesses. *Worrell v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 671, 378 S.W.3d 258.

### III. *Points on Appeal*

DHS argues that (1) the circuit court erred by not adjudicating the juveniles dependent-neglected; and (2) the circuit court committed error when it ordered that MC1 remain in foster care without a dependency-neglect finding.

### IV. *Discussion*

The circuit court's order held that DHS failed to meet its burden to prove the juveniles dependent-neglected but, nonetheless, that a protective-services case remain open for MC1 and that she remain in foster care. Regarding the other four juveniles, the court held there is no proof that they were abused; therefore, they were returned to the custody of the parents. On appeal, DHS maintains that the court's findings are inconsistent because

5

the Juvenile Code does not allow a juvenile to remain in foster care without a dependency-neglect finding. Accordingly, DHS argues, the circuit court's order is clearly erroneous and should be reversed. We agree that the court's findings are inconsistent, and the court's order for MC1 to remain in foster care is not in accordance with Arkansas law.

In dependency-neglect proceedings, we give great deference to the circuit court since it is in a far superior position to judge the credibility of the witnesses. *Minor Children v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 588, 589 S.W.3d 495. Arkansas Code Annotated section 9-27-303(17)(A) (Supp. 2023) defines a "dependent-neglected juvenile" as

> [a]ny juvenile who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile:
>
> (1) Abandonment;
>
> (2) Abuse;
>
> (3) Sexual abuse
>
> (4) Sexual exploitation;
>
> (5) Neglect;
>
> (6) Parental unfitness; or
>
> (7) Being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof, Ark. Code Ann. § 9-27-327(a)(1)(A) (Repl. 2020), and such allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(ii) (Supp. 2023). The focus of an adjudication hearing is on the child, not the

6

parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. *Skalski v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 433, at 4.

Here, after listening to the testimony of MC1 as well as Montelara, Stephens, and Stephens's mother, the circuit court held that DHS had not proved by a preponderance of the evidence that MC1 was dependent-neglected. While the court's order made no specific findings regarding credibility—instead qualifying this as a "he said she said" issue—the circuit court was clear in its determination that DHS failed to meet its burden of proof. In reaching this conclusion, the circuit court had to have given greater weight to the testimony of Montelara, Stephens, and McClanahan, rather than that of MC1. This the circuit court was free to do, as it is vested with the responsibility of making credibility determinations. Because this court does not act as a "super-fact-finder" or substitute our judgment for that of the circuit court, we cannot conclude that the court made a firm and definite mistake in its dependency-neglect finding. *See Bean v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 350, 498 S.W.3d 315.

However, we do find that the circuit court committed clear error when it ordered that MC1 was to remain in foster care without a dependency-neglect finding. Additionally, the court's justification for keeping MC1 in foster care while dismissing the case regarding her four siblings because "[t]here is no proof that the other children were abused" is also erroneous. Arkansas Code Annotated section 9-27-303(17)(A) mandates that a finding of dependency-neglect of a sibling can establish that another sibling is at substantial risk of serious harm. Furthermore, our case law supports a circuit court's finding of dependency-

7

neglect for any sibling of a child who has suffered neglect or abuse—even though there is no reason to think that the other siblings have also been abused or neglected. *See Eason v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 507, 423 S.W.3d 138. Therefore, DHS was not required to prove the dependency-neglect basis as to each juvenile. Accordingly, the court's order mandating MC1 to remain in foster care while her siblings return to the custody of the parents is clearly erroneous and must be reversed.

Moreover, the court cites no precedent—and we have found none—that gives a circuit court the authority to deny a dependency-neglect petition but nonetheless order a juvenile to remain in foster care and instruct DHS to keep a case open as to only one of five siblings. When DHS raised its objection and concerns at the hearing, the circuit court adamantly proclaimed that it could "open up a protective services case for the young lady and see how this works out." After counsel for the parents stated that they were "fine" with MC1 staying with her aunt "indefinitely," the court specified that counsel needed to prepare an agreed order reflecting that MC1's case was still pending "only for the purposes of protecting the family unit." However, no agreed order was ever entered.

Arkansas Code Annotated section 9-27-329(a) (Supp. 2023) states: "If the circuit court finds that the petition has been substantiated by the proof at the adjudication hearing, a disposition hearing shall be held for the court to enter orders consistent with the disposition alternatives." Further, the statute requires that in considering the disposition alternatives, the court "shall give preference to the least restrictive disposition consistent with the best interest and welfare of the juvenile. . . ." Here, the court uses the least-restrictive-

8

disposition language of the statute in its order when holding that MC1 must remain in foster care while expressly holding that it is not making "any findings as to adjudication." Because the court declined to adjudicate MC1 dependent-neglect, it cannot jump to the disposition alternative of foster care without the requisite finding. While we acknowledge the circuit court's finding that "it is contrary to the welfare of [MC1] to go home" and are sympathetic to the court's express concerns regarding MC1, a circuit court simply cannot require a juvenile to remain in DHS custody without the requisite authority to do so. Pursuant to Ark. Code Ann. § 9-27-329(a), disposition alternatives such as foster care may be explored only after a dependency-neglect finding. Thus, the portion of the circuit court's order requiring MC1 to remain in foster care and in DHS custody—despite the court's declination to adjudicate the juveniles dependent-neglected—is reversed, and the case is thereby dismissed.

V. *Conclusion*

Giving due deference to the circuit court's dependency-neglect finding, we cannot say that the court's conclusion was clearly erroneous; however, the portion of the order mandating that MC1 remain in foster care is reversed and the case is accordingly dismissed.

Affirmed in part; reversed and dismissed in part.

GRUBER and MURPHY, JJ., agree.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellant.

One brief only.

9