Cite as 2025 Ark. App. 33

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-569

|  |  |
|---|---|
| | **Opinion Delivered** January 22, 2025 |
| DANIELA PINEDA-GARCIA<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72JV-24-236] |
| V. | |
| | HONORABLE DIANE WARREN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Daniela Pineda-Garcia appeals order of the Washington County Circuit Court adjudicating her son, MC, dependent-neglected because of physical abuse. Appellant argues that the evidence is insufficient to support a finding of dependency-neglect. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition of emergency custody and dependency-neglect on April 16, 2024. According to the accompanying affidavit, DHS received an investigation referral on April 11 concerning five-year-old MC, who had reported being choked by appellant. Family Service Worker (FSW) Aaron Wayne received the referral; however, he determined that Washington County was the appropriate venue for the case. FSW Abel Serrano was assigned to the case and subsequently traveled to

the Children's Safety Center in Springdale and observed an interview of MC. MC stated that appellant had choked him before bed the night before and that he could not breathe at the time. He also had a small mark on the right side of his neck. Appellant denied choking MC but stated that she had grabbed him by his shoulders with both hands and put him in bed when he refused to go on his own. Appellant stated that MC might have interpreted what happened as him being choked. She also stated that if she did choke MC, it was an accident and "it could have been something in the heat of the moment." The Springdale Police Department issued a no-contact order between appellant and MC on April 11 after receiving a referral from DHS. MC was removed from appellant's custody that same day. MC's younger sister was left in the home because there was no indication of abuse or neglect and no prior history with DHS. The circuit court filed an ex parte order for emergency custody on April 17. A probable-cause order followed on May 15 wherein the circuit court found that continued DHS custody was necessary for MC's protection and best interest of MC.

The circuit court held an adjudication hearing on June 10. Detective Josue Rivas of the Springdale Police Department testified that he was assigned to the case following a hotline report. He said that he witnessed MC's interview at the Children's Safety Center and that MC "disclosed an injury and pain on the right side of his neck and he made several comments about possibly being choked." He stated that he found MC credible during the interview. He stated that he also found appellant credible when she denied choking MC. Detective Rivas said that there was a one-fourth-inch injury on the right side of MC's neck.

He testified that he subsequently made the decision to charge appellant with third-degree domestic battery and put a no-contact order in place. He said that the no-contact order is still in place and that criminal charges against appellant are pending. On cross-examination, Detective Rivas agreed that it was possible that MC perceived appellant's actions as choking without appellant choking him.

FSW Serrano testified that he witnessed MC's initial interview and stated that MC disclosed that appellant had choked him and then "put his hands to his neck indicating, like that she choked him." He said that he found MC credible in his interview. He stated that MC was removed from appellant's custody because there was a no-contact order in place and appellant had no other support. He testified that he currently oversees visits between MC and his stepfather and that MC expresses his desire to go home. He stated that as long as there is a no-contact order in place, MC cannot be returned to the home. He admitted on cross-examination that MC might have perceived something else as choking due to his young age. He also stated that MC has not expressed any fear of appellant. FSW Serrano opined that based on the scratch on MC's neck, MC was not "necessarily choked, . . . he misunderstood the situation." He did admit that MC's neck was sore to the touch but said that he viewed no bruises on MC's neck.

FSW Haley Miles testified that she is the caseworker in this case. She stated that MC is currently in a foster home in Rogers. She said that MC should remain in DHS's custody due to the no-contact order in place between him and appellant. She also stated that she

3

has received reports that MC "reenacts getting choked by his mother and he thinks about it a lot." She testified that the goal of the case is reunification.

Stacy Warren, the FSW supervisor for Washington County DHS, testified that there is a true finding against appellant for abuse that may or may not have caused physical injury involving MC.

At the conclusion of the hearing, DHS asked the circuit court to find MC dependent-neglected as a result of abuse, neglect, and parental unfitness. Appellant's attorney argued that the evidence was insufficient to find that appellant had abused MC. The ad litem opined that MC could not be returned to the home due to the no-contact order, the true finding of abuse, and the criminal charges against appellant as well as a pending abuse investigation against the stepfather.

The circuit court found that MC was dependent-neglected on the basis of physical harm and noted that "[MC] credibly disclosed that [appellant] choked him. The testimony is that he has reenacted -- that he not only said that verbally, but he had a physical description of being choked. That the testimony further was that he has reenacted that since he's been in care." The circuit court pointed out appellant's statement in the affidavit that "if she did choke him she did not mean to and it could have been something in the heat of the moment." It also noted the true finding of abuse, the pending criminal charges, and the current no-contact order when finding MC dependent-neglected. The adjudication order was filed on June 13. Appellant timely appealed.

4

An adjudication of dependency-neglect is immediately appealable.[1] The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof.[2] The burden of proof at an adjudication hearing is preponderance of the evidence.[3] In dependency-neglect cases, the standard of review on appeal is de novo, but the appellate court will not reverse the circuit court's findings unless they are clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] Moreover, in reviewing dependency-neglect adjudications, we defer to the circuit court's evaluation of the credibility of the witnesses.[6]

The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected.[7] "A dependent-neglected juvenile is defined as any juvenile who is at substantial risk of serious harm as a result of abuse, neglect, or parental unfitness to the juvenile or a sibling of the

---

[1]Ark. Sup. Ct. R. 6-9(a)(1)(A).

[2]*Ark. Dep't of Hum. Servs. v. Hall*, 2021 Ark. App. 108, 618 S.W.3d 219.

[3]*Id.*

[4]*Hilburn v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 420, 558 S.W.3d 885.

[5]*Hall, supra.*

[6]*Worrell v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 671, 378 S.W.3d 258.

[7]*Ussery v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 250, 646 S.W.3d 266.

juvenile."[8]  Additionally, a finding of dependency-neglect occurs without reference to whether a particular parent committed the acts or omissions that caused the dependency-neglect; rather, the juvenile is simply dependent-neglected.[9]

Appellant contends that the evidence is insufficient to support the circuit court's finding that MC is dependent-neglected.  MC was adjudicated dependent-neglected based on physical abuse.  Pursuant to Arkansas Code Annotated section 9-27-303(3)(A)(v), abuse includes any nonaccidental physical injury committed by a parent or guardian.  Abuse also includes the intentional or knowing interference with a child's breathing with or without physical injury.[10]

The evidence shows that MC disclosed that appellant choked him, and he was unable to breathe at that time.  He continued to reenact the incident even while in foster care.  There was a small scratch in the area where MC stated he was injured, and he also indicated pain in that area when touched although no bruising was present.  Although the witnesses agreed that MC could have misperceived what appellant had done to him, criminal charges were brought against her, a no-contact order was put in place, and there was a true finding

---

[8]*Raynor v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 263, at 7, 646 S.W.3d 406, 411 (citing Ark. Code Ann. § 9-27-303(17)(A)(ii), (v), (vi).

[9]*Araujo v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 181, 574 S.W.3d 683.

[10]Ark. Code Ann. § 9-27-303(3)(A)(vii)*(c)*.

of abuse.  Based on this evidence, we cannot say that the circuit court erred by finding that MC was dependent-neglected due to physical abuse.  Therefore, we affirm.

We note that the arguments made by appellant are nothing more than requests that we reweigh the evidence in her favor, which we will not do.  The circuit court's weighing the evidence differently that appellant wanted it to be weighed is not reversible error.  We do not act as a super fact-finder nor do we second guess the circuit court's credibility determinations.[11]

Affirmed.

TUCKER and WOOD, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

---

[11]*See McCord v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 244, 599 S.W.3d 374.