

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-637

|  |  |
|---|---|
| | **Opinion Delivered** November 19, 2014 |
| ANGELA TURNER | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. JV-2014-106-6] |
| **APPELLANT** | |
| V. | |
| | HONORABLE EARNEST E. BROWN, JR., JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| **APPELLEES** | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Angela Turner appeals the circuit court's order that adjudicated her six children dependent-neglected because, she argues, the evidence does not support a finding of abuse. We affirm the circuit court's order.

In February 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of fourteen-year-old A.B. The attached affidavit explained that the Pine Bluff Police Department received a report from Brian Showers that his six-year-old daughter, H.S.1, had been abused by Turner, her mother.[1] The police contacted DHS and reported bruises and welts on the child's back. Family Service Worker Anissa Ballew responded to the scene and interviewed H.S.1, who explained that

---

[1]Turner has seven children. Brian Showers is the father of M.S., D.S., F.S., H.S.1, H.S.2, and B.S.; Ah-Kee Biddings is the father of A.B.

SLIP OPINION

the previous day, eleven-year-old M.S. had been "messing" with her, and "Momma came in and whooped me and [M.S.]. I was crying and she kept whooping on me with a belt. I got three whoopings on my back." Ballew observed the injuries to the child's back and took photographs.

Ballew spoke to her supervisor, who advised her to locate Turner and the other children. Ballew and a police escort arrived at Turner's home. Turner and the remaining children were transported to the police station after Turner "was immediately belligerent on scene with the police." Three of H.S.1's siblings confirmed that H.S.1 "gets whooping[s] with the belt." Ballew also interviewed Turner, who stated that she did not know how H.S.1 got the welts on her back and that she does not "spank my kids ever; I just spat them on the hand." Turner accused the child's father, Brian Showers, of "whooping" H.S.1. Turner was arrested for second-degree domestic battery, and the six children belonging to Showers were placed in his custody pending the probable-cause hearing. DHS exercised a seventy-two-hour hold on A.B.

At the probable-cause hearing, held on February 26, the court found that there was no longer any probable cause to retain custody of A.B. and ordered that he be returned to his mother. The other six children, however, were placed into the custody of DHS because their father, Brian Showers, was arrested that day on a body attachment for failure to pay child support.

The court held an adjudication hearing on April 17. Some of the hearing testimony is summarized below:



Police Officer Julie Hillard testified that she responded to the call reporting child abuse and spoke to H.S.1, who said that her mom had spanked her after an altercation with M.S. Hillard observed that H.S.1 had "a lot of looked like welt marks on her back there in a purplish color." Hillard also talked to B.S., who said that their mom had spanked H.S.1 with a blue belt. Hillard identified a photograph of H.S.1's back as accurately depicting the marks that she saw on the child's back.

Detective Sandra McAfee testified that H.S.1 stated that her mother whipped her with a belt, and McAfee observed several marks on H.S.1's back that appeared to be welts. McAfee also interviewed Turner, who admitted that she had given H.S.1 "some licks." Turner insisted, however, that she hit H.S.1 on her hand and could not explain how the child got the welts on her back. McAfee looked at the photograph of H.S.1's back and said that there were at least twenty marks.

M.S. testified that she and H.S.1 used to get whippings but that H.S.1 had not had a whipping "in a long time." M.S. said that H.S.1 did not get a whipping with a belt; instead, M.S. claimed that she and D.S. had scratched H.S.1's back. According to M.S., H.S.1 was complaining that her back itched, so her two sisters scratched her back. But, after looking at the photograph of H.S.1's back, M.S. said she did not believe she caused those marks. D.S. also testified that she and M.S. scratched H.S.1's back and that was what caused the marks on H.S.1's back, but she later testified that she did not think that she scratched enough to cause the marks on H.S.1's back.

After the testimony concluded, DHS requested a finding of physical abuse against Turner. In its ruling from the bench, the court explained that it had "a number of cases"



involving A.B. and Turner, had seen Turner in court before, and "was inclined to have a hard time believing" that the abuse occurred until it heard the testimony presented at the hearing, specifically from the other children. The court found the six children dependent-neglected based on physical abuse. The court allowed the children to stay in Showers's home and allowed Turner to attend school functions and doctors' appointments. Turner was not allowed to stay overnight at Showers's residence, however, and was ordered to exercise visitation at DHS.

A dependent-neglected juvenile is one at substantial risk of serious harm as the result of, among other things, abandonment, abuse, or neglect committed against the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(18)(A)(i), (ii) and (v) (Supp. 2011). Abuse is defined, among other ways, as any nonaccidental physical injury or any injury that is at variance with the history given. Ark. Code Ann. § 9-27-303(3)(A)(iv) and (v). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2011). We will not reverse the circuit court's findings unless they are clearly erroneous. *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Williams v. Ark. Dep't of Human Servs.*, 99 Ark. App. 95, 257 S.W.3d 574 (2007). In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Seago*, *supra*. And in an adjudication hearing, the focus is

SLIP OPINION

on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Id.*

On appeal, Turner argues, among other things, that the evidence was insufficient to support a finding of abuse. Turner asserts that the witnesses who testified on behalf of DHS "were not sufficiently credible" and that the children's testimony about the back-scratching provided an alternate explanation for the marks. She concludes by asserting that the witness testimony did not demonstrate, by a preponderance of the evidence, that the children were at substantial risk of serious harm.

We hold that the circuit court could, and did, decide that abuse had been proved by a preponderance of the evidence. And while only one child had signs of physical abuse, the statute is clear that a juvenile can be at risk of serious harm, and thus dependent-neglected, based on an act of abuse inflicted on the juvenile's sibling. *See* Ark. Code Ann. § 9-27-303(18)(A); *see also Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001) (explaining that parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question). We find no error and affirm the circuit court's order.

Affirmed.

HIXSON and WOOD, JJ., agree.

*Travis Ragland*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.

