SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-1032

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLANT<br><br>V.<br><br>TORONTO WALKER AND LEVAR ROUNSVILLE<br><br>APPELLEES | Opinion Delivered April 13, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. JN2015-1058]<br><br>HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>REVERSED AND REMANDED |

## M. MICHAEL KINARD, Judge

On July 30, 2015, the Department of Human Services (DHS) took an emergency hold on three of appellee Toronto Walker's children: C.W., age fifteen; L.R.1, age eleven; and L.R.2, age ten.[1] DHS filed a petition for ex parte emergency custody and dependency-neglect based on abuse, neglect, and parental unfitness as to the juveniles or their sibling. An ex parte order for emergency custody was entered, followed by a probable cause order. After the adjudication hearing, the trial court adjudicated only C.W. dependent-neglected and closed the case as to L.R.1 and L.R.2. DHS now appeals the order of the trial court denying its petition to adjudicate L.R.1 and L.R.2 dependent-neglected. We reverse and remand.

---

[1]Appellee Levar Rounsville is the father of L.R.1 and L.R.2. The father of C.W. was not a party in this case.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9–27–327(a)(1)(A) (Repl. 2015). Dependency-neglect allegations must be proven by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B). We will not reverse the circuit court's findings unless they are clearly erroneous. *Turner v. Arkansas Department of Human Services*, 2014 Ark. App. 655. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Id.*

Arkansas Code Annotated section 9-27-303(18)(A) defines a dependent-neglected juvenile as any juvenile who is at substantial risk of serious harm as a result of, among other things, abuse of the juvenile or a sibling. The definition of abuse includes any nonaccidental physical injury; intentionally or knowingly striking a child with a closed fist when physical injury occurs; and intentionally or knowingly interfering with a child's breathing with or without physical injury. Ark. Code Ann. § 9-27-303(3)(A)(v)–(vii).

Abuse shall not include physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting the child. Ark. Code Ann. § 9-27-303(3)(C)(i). Reasonable and moderate physical discipline shall not include any act that is likely to cause and that does cause injury more serious than transient pain or minor temporary marks. Ark. Code Ann. § 9-27-303(3)(C)(iii). The age, size, and condition of the child and the location of the injury and the frequency or

2

recurrence of injuries shall be considered when determining whether the physical discipline is reasonable or moderate. Ark. Code Ann. § 9–27–303(3)(C)(iv).

This case originated when police were called to an assault that had just occurred on July 29, 2015. Little Rock Police Officer Mark Ison testified that both C.W. and Walker told him that they had argued because Walker believed C.W. was cooking too many burritos in the toaster oven. C.W. told Ison that Walker had hit him in the head and hands with a cookie sheet. Walker claimed that she hit C.W. with the cookie sheet because he hit her in the chest with his hand. Ison observed a small cut above one of C.W.'s eyes and a nick on one of his hands; he did not see any marks on Walker. Walker was charged with domestic battery in the third degree.

C.W. told Ison that Walker had abused him and his siblings for years. C.W. said that Walker beat him with an extension cord, and he showed Ison older scars, including one in a loop shape caused by Walker doubling the cord over. Ison also spoke with C.W.'s adult brother, Damonteago Barnum, who told Ison that Walker had choked L.R.1 and L.R.2. Ison said that he spoke with L.R.1 and L.R.2 based on what he had been told about the "lifetime of abuse." When he spoke with L.R.1 and L.R.2 on the front porch of their home, they looked at the ground and refused to make eye contact; however, Walker was inside and the door was cracked open. Later at the police station, Ison spoke with L.R.1 and L.R.2 separately, and they both told him that they had been choked by Walker before.

Kristie Henderson, a DHS investigator, spoke with the children on July 30. C.W. told her that, in addition to hitting him with the cookie sheet, Walker had also punched him

with a closed fist in the head and the stomach. Henderson observed a bruise near C.W.'s temple and scratches in the center of his chest, as well as older bruising on his arm. Henderson observed loop-shaped bruising on the backs of both L.R.1 and L.R.2, and the children told her that the injuries were caused by Walker. Pictures of the children's injuries were admitted into evidence.

Walker admitted to Henderson that she had whipped the children with an extension cord. Walker told her that the goal was to hit them on their bottoms, but they may have been hit on their backs because they did not stay still. DHS had several prior contacts with the family. A protective-services case was opened in December 2008 after an allegation that C.W. had cuts, welts, and bruises. Other reports to the child-abuse hotline in July 2012 and June 2015 alleged that Walker had physically abused the children, but these allegations were deemed unsubstantiated.

C.W. testified that during the assault, Walker hit him with the cookie sheet several times and hit him in the head with a closed fist. He denied hitting her or doing anything that would have caused her to hit him. C.W. said that he had witnessed Walker abuse L.R.1 and L.R.2 and that the abuse occurred almost every day. He said that Walker hit them with a closed fist and an extension cord.

The trial court adjudicated C.W. dependent-neglected upon finding that he was at substantial risk of serious harm as a result of physical abuse by Walker. The court found that there was no proof that L.R.1 and L.R.2 were at risk of harm, stating that there was no evidence of recent injuries as the loop marks on their backs were old. The order closed the

case as to L.R.1 and L.R.2.

DHS argues that L.R.1 and L.R.2 were at substantial risk of serious harm as a result of both Walker's abuse of C.W. and Walker's abuse of L.R.1 and L.R.2 themselves. We agree. Even when only one child has signs of physical abuse, the statute is clear that a juvenile can be at risk of serious harm, and thus dependent-neglected, based on an act of abuse inflicted on the juvenile's sibling. *Turner v. Arkansas Department of Human Services*, 2014 Ark. App. 655; *see also Arkansas Department of Human Services v. McDonald*, 80 Ark. App. 104, 91 S.W.3d 536 (2002); *Brewer v. Arkansas Department of Human Services*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). Here, not only was there evidence of abuse of L.R.1 and L.R.2's sibling that placed them at risk of harm, but there was also evidence that they had been abused themselves.

The testimony at the adjudication hearing established that Walker admitted to hitting C.W. with a cookie sheet, admitted to whipping the children with an extension cord, and admitted that the extension cord hit their backs. All of the children had loop-shaped injuries that the trial court recognized were from being hit with the extension cord. Pictures showed that both L.R.1 and L.R.2 had several of these injuries on their backs. Furthermore, L.R.1 and L.R.2 both told a police officer that their mother had choked them. The children's adult brother told police the same thing. C.W. testified that Walker had consistently abused him and his siblings for years, including hitting them with her fists.

Although the trial court discounted the children's loop-shaped injuries because they were "old," their existence is proof that the bounds of reasonable and moderate discipline

were exceeded because the whippings caused more than minor temporary marks. Even if they were old, the loop-shaped injuries demonstrated that the children were at substantial risk of similar harm in the future. In *Turner, supra*, this court affirmed the adjudication of six siblings as dependent-neglected based on the evidence that one child had welts on her back after being whipped with a belt. Taking into consideration all of the evidence of abuse, we are left with a definite and firm conviction that a mistake has been made. The trial court's finding that L.R.1 and L.R.2 were not dependent-neglected is clearly erroneous. Accordingly, we reverse and remand.

Reversed and remanded.

GLOVER and HOOFMAN, JJ., agree.

*Jerald A. Sharum*, Office of Chief Counsel, for appellant

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

*Kimberly Eden*, for appellee.