Cite as 2024 Ark. App. 529

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CV-24-314

| | |
|---|---|
| WILLIAM RAYMOND | Opinion Delivered October 30, 2024 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION [NO. 60JV-23-798] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TJUANA BYRD MANNING, JUDGE |
| APPELLEES | AFFIRMED |

### WENDY SCHOLTENS WOOD, Judge

William Raymond appeals an order adjudicating his children dependent-neglected. He argues three points on appeal: (1) the evidence was insufficient to support a finding of dependency-neglect; (2) evidentiary errors committed by the circuit court require reversal; and (3) the circuit court errantly relied on investigative findings in its adjudication. We affirm.

William is the father of MC1 (12/11/15), MC2 (07/06/18), and MC3 (06/18/19).[1] On August 29, 2023, Tamera Walker, a family-service investigator from the Arkansas Department of Human Services (DHS), went to Candice's home to speak with her about a

---

[1] The children's mother, Candice Giles, is also the mother of twins, MC4 and MC5 (07/03/17), none of whom are parties to this appeal. Candice passed away on September 1, 2023.

report that had been made. In her affidavit, Walker stated that Candice was crying and told her that William made her go to court and sign away her rights to her children. Walker said Candice was slurring her words and told Walker that she had "done cocaine" that day.

Walker said that William was at the home and packing the children's clothing to take the children with him. He told Walker that he was tired, that he had been trying to get help with the children, and that "no one would help." When she saw that he was taking MC1, MC2, and MC3 but leaving the twins, Walker told William that if he left the twins, they would be taken into DHS custody because Candice was "under the influence." William took all five children with him and left.

Walker said that when she went back inside to finish her conversation with Candice, Candice told her that it wasn't "fair" for William to take the children because he had smoked cocaine with her that day. Walker then called William to come back to the home. When he returned and Walker informed him that he needed to be drug tested because of Candice's allegation, William said he would take the test but started yelling and asking why no one "helps" him. Despite Walker's continuing to ask him to take the test, William left the house. Walker told him that all five children were in DHS custody, he needed to remove his children from the truck, and she would call law enforcement if he refused. William left the twins at the house but drove off with MC1, MC2, and MC3. Walker called law enforcement officers, who subsequently located MC1, MC2, and MC3. All five children were placed in DHS custody, and William was charged with three counts of interfering with custody.

Walker's affidavit stated that DHS had been involved with the family since 2019 and included allegations against Candice and William for neglect, inadequate shelter, substance misuse, environmental neglect, and failure to provide food. According to the affidavit, William went to a drug-rehabilitation center in 2020 but was dropped from the program for leaving the facility for an hour and testing positive for amphetamine and cocaine on his return.

On September 5, 2023, DHS filed a petition for emergency custody and dependency-neglect, recognizing that Candice had passed away and alleging that all five children were at a substantial risk of serious harm as a result of neglect and parental unfitness. DHS also alleged that MC4 and MC5's putative father was deceased and that they had no appropriate relative or friend willing or able to provide care. In an order entered on October 10, the court found that probable cause supported removal of the children, specifically noting that it could not place William's children with him because of uncertainty about his substance use and concerns about domestic violence in the home.

On October 30, DHS filed an amended petition for dependency-neglect, incorporating the allegations contained in the original petition and adding information from a hotline report from October 7. The report concerned MC2's attempt to place his penis in his sibling's mouth, the children's stating that William showed them videos of men doing this to women, and their report of witnessing Candice and another woman having sex with William. The amended petition alleged that the children were dependent-neglected and at a

substantial risk of serious harm as a result of sexual abuse, sexual exploitation, neglect, and parental unfitness.

At the adjudication hearing, William testified that he was living at his aunt's house waiting to get his own housing. He denied using cocaine with Candice on the day the children were removed but admitted that he had used illegal substances in the past. He also said that he had taken a hair-follicle drug test in October and that he had used cocaine, PCP, and amphetamines before the test. He admitted that he had been convicted of two felonies: one for robbery and one for assault on a family member (Candice), for which he was currently on probation. He said that a petition to revoke his probation had been filed. He denied any sexual abuse.

Aaron Gossett, senior investigator for the Arkansas State Police, Crimes Against Children Division ("CACD"), testified about the children's reports of sexual abuse by William. Gossett said that the child-maltreatment investigation was closed but that the criminal investigation of the matter was ongoing. He said the child-maltreatment investigation resulted in true findings against William of sexual abuse; deviant sexual activity, including sexual contact and sexual penetration; sexual exploitation; and exposure to live sexual activity. He said that his investigation was completed in November 2023 but that he had been unable to locate William to notify him of the results. Gossett testified about what the children told him and why he found the children's reports credible. He concluded by opining that William would "absolutely not" be a safe option for placement of the children.

Before Gossett began testifying about what each child reported, William's attorney objected to the children's statements as hearsay. DHS argued that the testimony was an exception to hearsay and admissible under Arkansas Rule of Evidence 804(b)(6): statements made by a child under the age of ten concerning any type of sexual offense or attempted sexual offense with, on, or against the child are excepted from hearsay if the circuit court determines the statement is sufficiently trustworthy and the proponent of the statement gives the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement. William's attorney responded that under all Rule 804(b) exceptions, the declarant must be unavailable. The court overruled William's objection and admitted the evidence because William had been notified that DHS intended to introduce the children's interviews under this hearsay exception, had been provided the interviews, and had not responded timely to the notice. William continued to argue that the court had not made a finding that the children were unavailable.

Walker testified that she was an investigator for DHS family services and had made several attempts to locate the family after a hotline report came in regarding them. She said that on August 29, DHS exercised emergency custody over the children because the parents were under the influence of drugs and William had fled with the children. She believed the children would be at risk if returned to William because he did not have stable housing and they could be exposed to drugs.

In its closing argument, DHS opined that the children were dependent-neglected based on parental unfitness, neglect, and sexual abuse and exploitation. The attorney ad

litem agreed with DHS, adding that William's drug use, his refusal to take a drug test on the day of the removal, his admission that he had used drugs in the past and within months before the removal, his physical-abuse issues, and the sexual-abuse findings supported a dependency-neglect finding.

On February 14, 2024, the circuit court entered an order adjudicating the children dependent-neglected due to neglect, parental unfitness, and sexual abuse and exploitation. The court stated that its finding was based on Candice's positive drug screen, Candice's statement that she had used cocaine with William the day the children were removed, William's refusal to submit to a drug screen that day, and William's acknowledgement that his subsequent hair-follicle drug screen was positive for some substances. The court also noted that William admitted he had used substances before the drug test, which the court found constituted evidence of substance issues. The court stated that its sexual-abuse and sexual-exploitation findings were based on the CACD's investigation that resulted in true findings for penetration, deviant sexual activity, and exposure to live sex acts committed by William. The court set concurrent goals of guardianship with a fit and willing relative and adoption. Finally, the court awarded no visitation between the children and William unless a therapist assessed and recommended that visitation is appropriate. William filed this appeal.

## I. *Sufficiency of the Evidence*

We turn first to William's challenge to the sufficiency of the evidence supporting the court's finding of dependency-neglect. A dependent-neglected juvenile includes any juvenile

who is at substantial risk of serious harm as a result of abuse, neglect, parental unfitness, or sexual abuse or exploitation to the juvenile or a sibling of the juvenile. Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2023). Additionally, a finding of dependency-neglect occurs without reference to whether a particular parent committed the acts or omissions that caused the dependency-neglect; rather, the juvenile is simply dependent-neglected. *Araujo v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 181, at 4, 574 S.W.3d 683, 686. Because of this, the focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. *Link v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 569, at 13, 680 S.W.3d 724, 732. Further, only one basis is necessary to support a dependency-neglect finding. *Garner v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 328, at 8, 603 S.W.3d 858, 862.

The purpose of an adjudication hearing is to determine whether the allegations in the petition are substantiated by the proof. *Raynor v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 263, at 7, 646 S.W.3d 406, 411. Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(A)(ii) (Supp. 2023). We will not reverse the circuit court's findings unless they are clearly erroneous. *Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 5, 389 S.W.3d 627, 629. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Ark. Dep't of Hum. Servs. v. Walker*, 2016 Ark. App. 203, at 2, 489 S.W.3d 214, 216. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility

of the witnesses. *McCord v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 244, at 8, 599 S.W.3d 374, 379.

Under section 9-27-303(37)(A), the definition of neglect includes "[f]ailure to take reasonable action to protect the juvenile from . . . abuse . . . when the existence of this condition was known or should have been known"; "[f]ailure or irremediable inability to provide for the essential and necessary physical, mental, or emotional needs of the juvenile, including failure to provide a shelter that does not pose a risk to the health or safety of the juvenile"; or "[f]ailure to appropriately supervise the juvenile that results in the juvenile being placed in inappropriate circumstances, creating a dangerous situation." Ark. Code Ann. § 9-27-303(37)(A)(iii),(iv) & (viii).

"Parental unfitness" is undefined in the Juvenile Code; however, appellate courts have repeatedly held that parental drug use is sufficient evidence of parental unfitness. *Ark. Dep't of Hum. Servs. v. Jackson*, 2021 Ark. App. 464, at 7, 636 S.W.3d 806, 810 (citing *Garner*, 2020 Ark. App. 328, at 7, 603 S.W.3d at 862 ("While 'parental unfitness' is not defined in the statute, case law indicates that illegal drug use by a parent renders that parent unfit.")); *Hilburn v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 420, at 4, 558 S.W.3d 885, 888 ("Illegal drug use by a parent makes that parent unfit."). Parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question. *Heggins v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 45, at 12, 659 S.W.3d 716, 723.

In its finding of dependency-neglect based on neglect and parental unfitness, the circuit court relied on Candice's positive drug screen; Candice's statement that she had used

cocaine with William on the day the children were removed from her custody; William's refusal to submit to a drug screen on the day of the children's removal; and William's acknowledgment that he was positive for some substances in his hair-follicle drug screen and his admission that he had used those substances prior to the test. Indeed, the court specifically noted that William's admission that he had used substances before the drug test constituted evidence of substance issues. Again, this court has repeatedly held that parental drug use is sufficient evidence of parental unfitness. *Ark. Dep't of Hum. Servs. v. Hall*, 2021 Ark. App. 108, at 8, 618 S.W.3d 219, 223; *Garner*, 2020 Ark. App. 328, at 7, 603 S.W.3d at 862; *Hilburn*, 2018 Ark. App. 420, at 4, 558 S.W.3d at 888.

William argues that it was erroneous for the court (1) to consider his refusal to submit to a drug screen as evidence, (2) to rely on Walker's hearsay regarding Candice's statements about William's use of cocaine, and (3) to find he had used drugs when there was no actual drug test admitted to demonstrate this. These arguments are not preserved for our review because he did not raise any of them at trial. *Manohar v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 482, at 7, 528 S.W.3d 881, 884. Moreover, failure to submit to random drug screens may be considered for a dependency-neglect finding. *See, e.g.*, *Hilburn*, 2018 Ark. App. 420, at 7, 558 S.W.3d at 889. In light of William's history of substance abuse and Candice's statement that William used drugs the day the children were removed, the court was entitled to consider William's failure to submit to a drug screen in its decision. In addition, William testified at trial about his use of drugs in the months before the children were removed from the parents' custody and his recently failed drug screen. Although he testified that he had

not used drugs since that time, the circuit court was not required to believe his self-serving testimony, and the record indicated that William had a history of drug use. *Tankersley v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 109, at 8–9, 389 S.W.3d 96, 100.

Accordingly, we uphold the circuit court's finding of dependency-neglect on the basis of parental unfitness. Because only one basis is necessary to support a dependency-neglect finding, we need not address the circuit court's findings regarding sexual abuse and sexual exploitation.

II. *Hearsay Testimony*

Next, William argues that the circuit court erred in relying on the inadmissible hearsay testimony of Gossett in finding there had been sexual abuse and sexual exploitation. We will not reverse a circuit court's ruling on the admissibility of evidence absent a manifest abuse of discretion. *Garner*, 2022 Ark. App. 33, at 6, 639 S.W.3d at 425. Even if there is judicial error in an evidentiary ruling, our court will not reverse unless the appellant demonstrates prejudice. *Davis v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 240, at 18, 687 S.W.3d 827, 839.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2023). The exception to hearsay proposed by DHS to allow Gossett to testify about what the children told him is Rule 804(b)(6), pursuant to which hearsay is admissible if the declarant is unavailable and the statement is made by a child under the age of ten concerning any type of sexual offense against the child. Ark. R. Evid. 804(b)(6) (2023). William argued

in the circuit court and continues to argue here that there was no finding that the children were unavailable. DHS does not dispute this.

However, even if the circuit court erred in admitting the evidence, we will not reverse absent a showing of prejudice. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). In light of our determination that there was sufficient evidence of parental unfitness to support a finding of dependency-neglect, this testimony, even if improperly admitted, was harmless. *Clary v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 338, at 5.

William also argues that the circuit court abused its discretion in relying on Gossett's expert opinion that the children's statements were credible because the opinion did not aid the court in understanding the evidence. William did not make this argument to the circuit court; his sole basis for challenging Gossett's testimony was that it is hearsay. Thus, it is not preserved for our review. *Edwards v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 37, at 11, 480 S.W.3d 215, 222. Moreover, the testimony was not necessary for the court's finding of dependency-neglect based on neglect and parental unfitness.

### III. *Right to Due Process*

Finally, William argues that the circuit court violated his right to due process by relying on the findings from the child-maltreatment investigation as a basis to support a dependency-neglect finding because he had not been informed of the outcome of the investigation or had the opportunity to be heard. He claims that the court's error warrants reversal of its finding of dependency-neglect on the basis of sexual abuse and sexual exploitation.

11

First, William failed to raise a due-process argument to the circuit court at the adjudication hearing; therefore, the argument is not preserved for our review. *Lawrence v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 223, at 11, 548 S.W.3d 192, 198. Additionally, as mentioned above, the circuit court adjudicated the children dependent-neglected on bases that had nothing to do with this investigation—parental unfitness and neglect. We affirmed on the basis of parental unfitness. Because only one basis is necessary to support an adjudication of dependency-neglect, the sexual-abuse evidence was not necessary to support the court's finding of dependency-neglect.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.
*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.
*Dana McClain*, attorney ad litem for minor children.